## HOOVER et al. v. MORTGAGE CO. FOR AMERICA.

(Circuit Court of Appeals, Ninth Circuit. July 2, 1923.)

No. 3987.

1. Receivers ⬯19, 54—Court held to have had jurisdiction to appoint receiver for irrigation system, necessary to preserve security of mortgage.

In a suit to foreclose farm mortgages pledged as collateral security for the note of a land and water company, a bill alleging that, if water was not furnished to the mortgaged property, it would become valueless and the security would become lost, and that the company was insolvent, was sufficient to give the court jurisdiction to appoint a receiver to operate the system pending the foreclosure, so that such appointment could not be afterwards attacked by parties who appeared in that litigation without raising the question of jurisdiction over them, and did not appeal from the appointment of the receiver.

2. Bankruptcy ⬯20(2)—Receiver appointed six months before bankruptcy can retain possession until fees are paid.

Where a receiver was appointed by a court having jurisdiction six months before petitions for adjudication in bankruptcy were filed against the corporation owning the property, the court appointing the receiver had the right to keep its control over all the assets until the charges and allowances to its receiver were paid, in view of Bankruptcy Act, § 67f (Comp. St. § 9651), recognizing as valid a lien obtained more than four months prior to the filing of the petition in bankruptcy.

3. Receivers ⬯92—Absence of irrigation district held not to affect agreement it should operate system without disturbing receivers' possession.

Where a receiver had been appointed for an irrigation company, an agreement entered into by all parties before the court, including the trustees in bankruptcy of the defendant company and an affiliated company, that the receiver should be paid a stated compensation and should retain possession of the property until it was paid, but that the system should be operated by an irrigation district without disturbing the receiver's possession, was not invalid, though the irrigation district was not a party to the suit.

4. Estoppel ⬯91(1)—Agreement by trustee in bankruptcy held to preclude attack on order fixing receiver's fees.

Where a trustee in bankruptcy had voluntarily submitted to the jurisdiction of a court which had previously appointed a receiver for the property, and had agreed to an order fixing the compensation of the receiver and directing the property to be turned over to the trustee when the compensation should be paid, the trustee cannot, after a sale of the property was ordered for failure to pay the receiver's compensation, contend that he was without authority to consent to the prior order.

5. Receivers ⬯199—Court has discretion to fix compensation of receiver and make it a lien on the property.

A court which appoints a receiver has discretion to make such allowances to the receiver as were fair, and to impress a lien on the property in his possession for payment thereof, if it saw fit to do so.

Appeal from the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Suit in equity by the Mortgage Company for America against the Jordan Valley Land & Water Company and others to foreclose a mortgage, in which E. M. Hoover, as trustee in bankruptcy of the named defendant, and another, appeared and prayed for an order directing the delivery of the property, then in the hands of the receiver appoint-

⬯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ed by the court, to them. From orders requiring the payment of compensation of the receiver as a condition precedent to delivery, and directing a sale of the property for failure to pay such compensation, the trustees in bankruptcy appeal. Affirmed.

Hoover, as trustee of the Jordan Valley Land & Water Company, a bankrupt corporation, and Wegener, as trustee of the Jordan Valley Farms,. also a bankrupt corporation, appeal from two certain orders made by the District Court in Oregon. The Jordan Valley Land & Water Company of Nevada, an irrigation construction corporation, associated with the Jordan Valley Farms, an Idaho corporation, both doing business in Oregon, were borrowers from the Mortgage Company for America, an alien corporation of the Netherlands. Joint and several promissory notes were made by the borrowing corporations, and as security they pledged certain farm mortgage notes of the landowners under the irrigation system of the Jordan Valley Land & Water Company. Thereafter in the United States court for Oregon the Mortgage Company brought suit to foreclose its pledge, alleged that the security by way of farm mortgages would be impaired unless a receiver was appointed to operate the irrigation system, and prayed for a receivership and for such other and further relief as should seem equitable. In September, 1921, the Oregon court appointed a receiver.

Six months thereafter in the United States court in Idaho, on petition of unsecured creditors, the Jordan Valley Land & Water Company and the Jordan Valley Farms were declared bankrupts, and trustees were elected. Soon thereafter the United States court in Oregon decreed foreclosure in the foreclosure suit referred to. The decree found the amounts due the Mortgage Company under the notes of the corporations, and directed a sale by a master of the collateral unless the amounts due should be paid within 10 days; also directed that the proceeds of the sale of the collateral securities pledged with the Mortgage Company should be applied, first, to the payment of expenses, costs, and disbursements of the proceeding, and the solicitor's fees, and, next, to the payment of the amounts due upon the certain promissory notes described. Afterwards, on May 4th, the trustees in bankruptcy applied to the Oregon court to have the receiver directed to deliver to the trustees all of the properties of the bankrupts then in the receiver's possession. The applications, together with a petition of the receiver for the approval of his accounts and fixing his compensation and that of his counsel, were heard. The trustees denied the liability of the estates of the bankrupts for such charges on the ground, among others, that the receiver was acting solely in the interests of the Mortgage Company and not for the benefit of the general creditors. The trustees set up the bankruptcy, pleaded loss of jurisdiction and control by the receiver, and averred the right of the trustees to possession and control of the property. The receiver joined issue, and the petition of the receiver for the approval of his accounts and allowances, and that of the trustees in bankruptcy were heard by the District Court in Oregon on July 14th.

At the hearing the receiver and also the trustees in bankruptcy appeared by counsel and were heard. The court made an order which, after reciting that the "parties having reached an agreement thereon, and the court being fully advised by agreement of the parties" adjudged that the receiver be allowed a designated sum for services rendered and additional sum for counsel fees, that such allowances be charged as "a lien" upon the assets of the bankrupt companies, and that the receiver retain possession of the properties until the allowances were paid. The court in its order referred to an irrigation district known as the "Jordan Valley Irrigation District," and directed that the receiver be authorized, without expense to the estate, to arrange with that district for the care of the water system without disturbing the possession of the receiver, the court retaining possession of the system and the mortgages and water contracts of the several companies to secure the allowances made to the receiver and for disbursements; that the receiver turn over to the trustees in bankruptcy the assets of the defendants when the charges provided for in the order shall have been paid in full, and not otherwise.

Some three months afterward the Mortgage Company, appellee here, by petition to the Oregon District Court, set up that the defendants had failed to pay the allowances included within the order of July 14th, although the Mortgage Company had paid all of the allowances made by that order. The Mortgage Company asked for an order directing the receiver to sell the assets of the two corporations, and that the proceeds of the sale be applied toward the reimbursement of the Mortgage Company, the receiver, and his attorneys.

Wegener, as trustee in bankruptcy, then applied to the Oregon court to vacate the order of July 14th, and offered certain affidavits in support of his application. In one Wegener's counsel said that he had voluntarily appeared in the matter of hearing upon the petition of the receiver for allowances, and agreed in court to a compromise whereby the Jordan Valley irrigation district would within a reasonable time pay the receiver a lump sum in settlement of the foreclosure suit and for charges by way of receiver's and attorney's fees, and that upon an assurance agreed to by counsel for the Jordan Valley Irrigation Company and the receiver, he gave consent to the making and entry of the order of July 14th, subject to approval of the creditors and the bankruptcy court, and that the petition for sale was a surprise to him as counsel for the trustee in bankruptcy; that in view of the failure of the receiver to comply with the terms of the "compromise settlement" the order of July 14th should be set aside; that the bankruptcy court in Idaho had never approved or ratified such "compromise settlement."

Hoover, as trustee, filed no petition for vacation, but by affidavit in support of Wegener's petition also set up that before the application for the order of July 14th was heard, at a conference between counsel for the receiver, and for himself as trustee, and for Wegener as trustee, the Jordan Valley irrigation district agreed that before December ——, 1922, it would pay the amounts claimed by the Mortgage Company, including fees of the receiver and his counsel, as specified in the order of July 14th; that the receiver and the Mortgage Company agreed to accept such payment and to discharge all of their claims against the two corporations, and the property and assets in possession of the receiver, "or upon which a lien" was claimed by the Mortgage Company; that because of such agreement the Mortgage Company and the receiver and their counsel "persuaded all parties, to waive any objection to the allowance of the fees and charges of said receiver, and to the approval of his accounts"; that thereupon, in reliance upon the agreement that the Jordan Valley irrigation district would pay the sums allowed counsel for the trustees in bankruptcy, counsel waived the objections and issues raised by the answer of Hoover as trustee, and consented to the allowance of the claims of the receiver and to his possession of the property belonging to the estate of the bankrupt as provided in the order of July 14th. Hoover sets up that he did not know of the order, or compromise, or waiver, until long after it was made; that it never had been approved by him, or the creditors of the bankrupt corporation, or by the bankruptcy court in Idaho, and that in so far as the order purported to create a lien upon the estate of the bankrupts in favor of the Mortgage Company or of the receiver, it is unauthorized and void, and was agreed to only upon the assurance that the irrigation district would pay the claims, and that such claims would not have to be paid by the bankrupt estates.

Thereafter, in November, the petition of the Mortgage Company, heretofore referred to, for the order authorizing the receiver to sell for the purpose of paying the allowances for compensation and expenses of the receivership, and for the services rendered by counsel, was heard. At the same time the petition of Wegener for vacating the order of July 14th and the affidavits in support thereof were considered. Thereafter, in November, 1922, the court made an order denying the petition of Wegener, and granting the petition of the Mortgage Company for a sale. In the order the court set forth that it appeared that the plaintiff, pursuant to the order of July 14th, had paid to the receiver the allowances included within said order and had become subrogated to the rights of the receiver and his attorneys. From

this last referred to order of sale, and from the previous order, made July 14th, the two trustees in bankruptcy have appealed.

Richards & Haga and C. E. Winstead, all of Boise, Idaho, for appellant Hoover.

Leslie J. Aker, of Boise, Idaho, for appellant Wegener.

Bronaugh & Bronaugh, of Portland, Or., for appellee.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). [1] The question of jurisdiction of the District Court in Oregon to make the order appointing the receiver of the properties not included in the security held by the appellee must be decided adversely to the appellants. The complaint in the foreclosure suit was of wider scope than appellants contend for. It alleged insolvency of the defendant corporations, default in payments due by them, that the collateral securities were in plaintiff's hands in Oregon; that maintenance and operation of the irrigation system was necessary; that the lands affected and covered by collateral mortgages assigned to plaintiff were all in Oregon and were dependent upon water for production of crops; that unless water could be had the lands would be of little value and great loss and suffering would be caused to the settlers, and the value of the collateral securities would be depreciated; that maintenance of the system was necessary both for agricultural operations and the conservation of plaintiff's security, and that a receiver was necessary. Plaintiff also asked for such other and further relief as should seem meet and equitable. Summons was served on both defendants, and upon an order to show cause why a receiver should not be appointed to take charge of the properties of the defendant corporations, the court, after reciting that it was necessary to preserve the properties mortgaged and that to that end it was necessary to operate the irrigation system owned by the Jordan Valley Land & Water Company, appointed a receiver for the two corporations, with directions to maintain the irrigation system and to operate the same to the end, that the mortgagors settlers referred to in the complaint might have the water to which they were entitled, and that the securities named in the complaint might be preserved and protected from destruction in value. The receiver was directed to take possession of all of the assets of the two corporations and proceed to liquidate the same, keeping accurate and segregated accounts.

Thereafter defendants answered the complaint, and as the record fails to disclose that objection was made by either to the jurisdiction of the court to make the order appointing a receiver, and inasmuch as the subject-matter of the suit was of a class of which the court had jurisdiction, defendants, by their appearances and failure to object, waived any possible objection on the ground of lack of jurisdiction. No appeal from the order appointing a receiver was taken, and it is not now to be disturbed. Doubtless the District Court regarded the suit as one against an insolvent corporation wherein a receiver was sought to conserve assets which, though not directly included in the mortgage security, were so related to the value of the mortgage se-

curity as to justify conservation through the orders of a court of equity. Interior Const. Co. v. Gibney, 160 U. S. 217, 16 Sup. Ct. 272, 40 L. Ed. 401; Camp v. Gress, 250 U. S. 308; Pusey v. Hanssen Co., 43 Sup. Ct. 454, 67 L. Ed. ——, decided April 9, 1923; Lehigh Valley Coal Co. v. Yensavage, 218 Fed. 547, 134 C. C. A. 275.

Next we consider the order of July 14th, making allowances to the receiver and to his counsel. As set forth in the statement, the order was made pursuant to an "agreement" of the "parties." At the hearing upon the petition for the order the trustees in bankruptcy and the receiver, respectively, were represented by counsel. The order expressly recites that the court was "fully advised" in the premises. No challenge appears to have been interposed to the jurisdiction of the court. Apparently in good faith an agreement was made concerning the allowances to be made to the receiver for himself and his counsel. So explicit was the order made pursuant to the agreement that the specific sums allowed were included, and that the agreement between the parties might be executed, the order authorized the receiver, without expense to the estates, "to arrange with an irrigation district known as the Jordan Valley irrigation project for the care of the system without surrender by the receiver," etc. The attitude of the trustees in bankruptcy was considered, for the order required the receiver to turn over to the respective trustees in bankruptcy the assets of the defendants when the charges provided for in the order were paid in full.

[2] It was nearly six months after the appointment of a receiver in Oregon that petitions for adjudications in bankruptcy were filed in the United States' court in Idaho. Under such circumstances the District Court in Oregon, having jurisdiction of the subject-matter, or of the thing in litigation, had the right to keep its control over all assets until the charges and allowances were paid. In Metcalf v. Barker, 187 U. S. 165, 23 Sup. Ct. 67, 47 L. Ed. 122, the Supreme Court, in considering section 67f of the Bankruptcy Act (Comp. St. § 9651), held that, where a lien is obtained more than four months prior to the filing of a petition in bankruptcy, it is not only not to be deemed to be null and void, but its validity should be recognized. In Blair v. Brailey, 221 Fed. 1, 136 C. C. A. 524, it was held that, by the appointment of a receiver and possession taken by the receiver of the property of the bankrupt, such action having been had more than four months prior to the bankruptcy, the court and the receiver acquired the custody and control of the property for the purposes sought to be accomplished by the suit, and the property so taken into the possession of the court is withdrawn from the jurisdiction of all other courts, though that court is not one of bankruptcy and although the property so in its possession is part of the estate of one who has been adjudged a bankrupt on a petition filed in a court of bankruptcy after the first-mentioned court's possession was acquired. The principle applicable was recognized, though conversely, in Murphy v. John Hofman Co., 211 U. S. 562, 29 Sup. Ct. 154, 53 L. Ed. 327; Griffen v. Lenhart (C. C. A.) 266 Fed. 671.

[3] The Jordan Valley irrigation district was not a party to the litigation, but that fact in no way affects the agreement between the parties to the proceedings whereby that district was to care for the property.

[4] Hoover, trustee, is an appellant; but, as he made no motion to vacate the order of the court made July 14th, he cannot ask this court for relief on appeal. But, if we could consider him as an appellant trustee, he is not entitled to relief. Both he and Wegener, as trustees, voluntarily submitted themselves to the jurisdiction of the court prior to the hearing, which preceded the making of the order of July 14th. Their action with respect to the matter of the allowances and the payment thereof, and with respect to the agreement referred to in the order of July 14th, must be presumed to have been taken under appropriate authority, and they should not now be heard to say that they lacked authority in consenting to the order made. The affidavits in support of the motion to vacate the order are insufficient to justify this court in holding that the order of the District Court made July 14th was not in full accord with the understanding of the parties as represented by counsel in court. That the action of the trustees never has been approved by the bankruptcy court in Idaho is not herein material.

[5] Questions pertaining to matters within the jurisdiction and discretion of the District Court for Oregon were appropriately for the consideration of that court, and under the situation of the case it was for that court to make such allowances to the receiver as were fair, and to impress a lien if it saw fit to do so. Pac. R. Co. v. Ketchum, 101 U. S. 289, 296, 25 L. Ed. 932; Lion Bonding & Surety Co. v. Karatz, 43 Sup. Ct. 480, 67 L. Ed. ——, decided April 23, 1923.

The orders appealed from are affirmed.