### In re AGAWAM RACING & BREEDERS' ASS'N, Inc.

#### No. 69001.

District Court, D. Massachusetts.

May 14, 1946.

756

David J. Cohen, of Boston, Mass., for trustee.

Donald M. Macaulay, of Springfield, Mass., for Town of Agawam.

**SWEENEY, District Judge.**

This is a petition to review two orders of the referee in bankruptcy—the first, an order allowing the trustee's petition for leave to sell real estate of the bankrupt free and clear of liens, with a provision that the selling price be for an amount not less than the full taxes as claimed, and with a direction that the liens be transferred to the proceeds of the sale; and, the second, an order denying the motion of the Town of Agawam to vacate a restraining order entered by him on July 19, 1944.

Prior to the present bankruptcy proceedings and, specifically, on December 23, 1935, the Agawam Racing and Breeders' Association (hereinafter referred to as "Agawam"), filed a petition for reorganization under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. On December 27, 1937, an order confirming the debtor's plan of reorganization was entered, but no final decree ever has been entered in those proceedings. In 1938 the voters of Hampden County voted to permit no further racing in that county. Agawam has been unable to pay its taxes to the Town of Agawam and owes substantial amounts therefor. Ever since the closing of the racing plant the Town of Agawam has continued to assess the property for approximately the same amounts which were levied when racing was being held. On August 23, 1939, the Collector of Taxes for the Town of Agawam, acting under Chapter 60, §§ 53, 54 of the Mass. G.L. (Ter.Ed.), gave a tax deed to the Town for nonpayment of taxes. This was in the regular statutory form.

On November 26, 1941, the Town of Agawam filed a petition to foreclose the Agawam statutory right to redeem. This action followed the form of the statute and was filed in the Land Court of the Commonwealth of Massachusetts. It was first assigned for hearing on May 28, 1942, and continued from time to time until June 29, 1943, when a motion for a decree was allowed, unless redemption should be made on or before September 23, 1943. This period of redemption was extended by stipulation several times, the last time to June 19, 1944. At that time a motion for final decree was filed and continued to July 14, 1944, at 12 o'clock noon.

On that same day at 9:50 a. m., Agawam was adjudicated a bankrupt in this Court and the case was immediately referred to the Referee in Bankruptcy for Suffolk County. At that time Agawam was the owner in fee simple of the racing plant located in the Town of Agawam, and was in exclusive physical possession of it. Between the hour on July 14, 1944, when Agawam was adjudicated a bankrupt and 12 o'clock noon, when the case was coming up for hearing in the Land Court, counsel for Agawam and for the bondholders sought an order from the Referee restraining the Town of Agawam from proceeding with its motion in the Land Court for a final decree. No restraining order was granted, but the Referee did write a letter which was delivered to counsel for the Town of Agawam. A copy was de-

livered to Judge Fenton of the Land Court prior to the hearing on the town's motion for a final decree. The letter reads as follows:

"July 14, 1944.

Thomas H. Kirkland,

Attorney for the Town of Agawam.

Dear Sir:

The Agawam Racing and Breeders' Association, Inc. has been adjudicated bankrupt this morning and the case referred to me. I am told by counsel for the bankrupt that you are about to move for a final decree from the Land Court on a petition filed by the Town of Agawam to wipe out the Racing Association's right to redeem the land for unpaid taxes.

The matter has just come to my attention and I know little or nothing about it. It is apparent, however, that there may be considerable litigation and that the interests of many people may be vitally concerned. I should think the Town might well withhold its motion for a final decree and allow the bankrupt and its creditors to have time to take an account of stock. If you agree, I think you would be justified in withholding your motion this morning. Whatever right the Town of Agawam has in the matter will not be prejudiced by delay. I feel sure that you and the representatives of the Town will be willing to cooperate for a time as I have suggested. If you feel that this informal request is not sufficient for a temporary respite, then I would suggest that you arrange with all persons interested to come here and be heard on the question of injunction.

I am sending a copy of this letter to Judge Fenton of the Land Court.

Very truly yours,
(Signed) Arthur Black."

Notwithstanding the actual notice to the Land Court of the adjudication in bankruptcy, the motion for a final decree was allowed on that date. On July 19, 1944, after due notice, the Referee issued a temporary restraining order enjoining the officials of the Town of Agawam and their counsel from seeking a final decree from the Land Court, and enjoining them from any attempt to alienate or transfer the property in question. On the same day, a formal notice of adjudication was filed on behalf of Agawam with the petition to the Land Court to stay proceedings in the case. On July 21, after a full hearing, the petition to stay was denied. Thereafter a final decree was entered purporting to foreclose Agawam's right of redemption.

On August 8, 1944, Agawam filed an appeal from the order of the Land Court denying the stay of proceedings. This appeal was never perfected because, in the meantime, the parties had apparently come to a compromise settlement of the whole affair. I find that the appeal was abandoned in reliance on counsel's for the town representation that it would be acceptable to the Town of Agawam. In fact, this compromise was accepted by the town at a town meeting called on February 20, 1945. On July 24, 1945, another town meeting was called and at this meeting the Town of Agawam repudiated its action of February 20, 1945.

On October 2, 1945, the trustee of Agawam filed the petition for leave to sell the racing plant free and clear of liens. I find that the plant has a substantial value in excess of the town's lawful taxes. On February 5, 1946, the referee entered the two orders which are here under review. It is to be noted that the order allowing the petition to sell specifies that sale was to be made for an amount not less than the amount which was due the Town of Agawam for taxes and, secondly, that any lien which the town had on the property itself was to be considered as transferred to the funds received from the sale. In other words, the referee's action in no way affected the town's right to collect its taxes but, rather, guaranteed that such collection would be made, and only reserved to the trustee in bankruptcy any excess over the Town of Agawam's claim.

Under the provisions of the Constitution (Const. Art. 1, § 8, cl. 4), the federal jurisdiction in bankruptcy is paramount and exclusive within the limits laid down by Congress. Upon the adjudication in bankruptcy, the bankruptcy court assumes custody of all property in the actual or constructive possession of the bankrupt

at the time. Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645.

The general rule is laid down by the Supreme Court in Gross v. Irving Trust Co., 289 U.S. 342, 344, 345, 53 S.Ct. 605, 606, 77 L.Ed. 1243, 90 A.L.R. 1215: "The fact that the jurisdiction of the bankruptcy court is paramount effectually distinguishes that class of cases which hold that as between courts of concurrent jurisdiction property already in the hands of a receiver of one of them cannot rightfully be taken from him without that court's consent by a receiver subsequently appointed by the other court. In Buck v. Colbath, 3 Wall. 334, 341, 18 L.Ed. 257, the rule is stated to be that 'whenever property has been seized by an officer of the court, by virtue of its process, the property is to be considered as in the custody of the court, and under its control for the time being; and that no other court has a right to interfere with that possession, unless it be some court which may have a direct supervisory control over the court whose process has first taken possession, *or some superior jurisdiction in the premises.'* And see Covell v. Heyman, 111 U.S. 176, 180, 4 S.Ct. 355, 28 L.Ed. 390. The present case falls within the italicized exception, since the jurisdiction of the bankruptcy court is paramount and not concurrent."

It is true that Gross v. Irving Trust Co., concerned proceedings brought in a state court within four months of bankruptcy, and that Straton v. New, 283 U.S. 318, 51 S.Ct. 465, 75 L.Ed. 1060, denied the power of the bankruptcy court to enjoin proceedings brought prior to the filing of the petition to enforce valid liens which are more than four months old at the date of bankruptcy.

I believe that Straton v. New is distinguishable from the case at bar. In that case an injunction was asked from the bankruptcy court against the prosecution of a suit in a state court to enforce a judgment lien. The state court proceedings were instituted five and one-half months before bankruptcy. Thus there was involved only the assertion of a *security right,* valid in bankruptcy, in a court of competent jurisdiction to enforce it. As the Court pointed out in Straton v. New at page 327 of 283 U.S., at page 469 of 51 S. Ct., 75 L.Ed. 1060, "It is clear that if the action in the state court was merely in the nature of an execution or proceeding to obtain the avails of the judgment lien it should not have been enjoined by the district court." This result does not prejudice creditors since the lien would be equally valid in bankruptcy, and any surplus over and above the lien would be available for distribution.

In the present case, however, the bankrupt continued in actual possession of the racing plant until the adjudication in bankruptcy. The equity of redemption was a valuable asset which passed to the trustee. There is a sizeable excess of value over and above the amount of the valid tax claims which should, in all equity, be available for creditors. I believe that, in such a situation, the broad policy of the bankruptcy laws against forfeitures and in favor of the protection of creditors places the case in the category where there is a "superior jurisdiction in the premises."

Since the problem, thus analyzed, is one of paramount and not concurrent jurisdiction, the rule of Isaacs v. Hobbs Tie & Timber Co. may be invoked that the state court is without jurisdiction to deal with the equity of redemption "save by consent of the bankruptcy court." 282 U.S. 734, 739, 51 S.Ct. 270, 272, 75 L.Ed. 645. Not only was no consent given, but a restraining order was issued against the town continuing to a final decree in the Land Court, and indeed an attempt was made on the part of the trustee to stay the proceedings therein. Under the circumstances this court cannot recognize as valid the decree of the Land Court foreclosing the right of redemption.

There remains for consideration the argument of the town that the issue of title to the assets must be determined in a plenary action rather than a summary proceeding. This question seems to have been disposed of by the Supreme Court in Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 481, 60 S.Ct. 628, 630, 84 L.Ed. 876. "Bankruptcy courts have summary jurisdiction to adjudicate controversies re-

lating to property over which they have actual or constructive possession. And the test of this jurisdiction is not title in but possession by the bankrupt at the time of the filing of the petition in bankruptcy."

The trustee's petition for leave to sell real estate of the bankrupt free and clear of liens, and directing that the liens be transferred to the funds received from the sale, is allowed. The motion to vacate the restraining order entered on July 19, 1944, is denied.