**MACON LUMBER COMPANY et al.,**
**Appellants,**

v.

**BISHOP and COLLINS et al.,**
**Appellees.**

**No. 12510.**

United States Court of Appeals
Sixth Circuit.

Feb. 10, 1956.

G. D. Milliken, Jr., Rodes K. Myers, Bowling Green, Ky., Shelton Luton, Nashville, Tenn., E. K. Sanders, Franklin, Tenn., on brief, for appellants.

Paul F. Bumpus, Nashville, Tenn., Douglas Keen and N. F. Harper, Scottsville, Ky., on brief, for appellees.

Before MARTIN, McALLISTER and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The appellees, as owners of preferred stock in the appellant corporation, Macon Lumber Company, brought this action against the corporation and its officers asking for the appointment of a receiver to take charge of the property of the corporation, and that the corporation be liquidated. Following appellees' motion for appointment of a receiver pendente lite and a hearing thereon, the District Judge appointed a receiver with instructions that an audit be made, and that an accounting of the assets and liabilities be taken by the receiver and reported to the Court. The appeal is from that order. Jurisdiction exists under Section 1292(2), Title 28 U.S.Code.

The underlying facts are not in dispute. The Lumber Company, organized under the laws of Tennessee, was, prior to 1952 conducting a lumber business at Lafayette, Tennessee. Following a fire in the early part of 1952, which almost totally destroyed its plant and inventory, it moved its business to Scottsville, Kentucky, certain citizens of which agreed to buy $50,000 of its preferred stock. They later purchased $73,000.00 worth. The two banks in Scottsville loaned $12,-500.00 each. However, attempts to negotiate a $100,000.00 loan from banks in Louisville and Nashville were unsuccessful. An application to the Reconstruction Finance Corporation for a loan in the original amount of $125,000.00, with participation therein by the two Scottsville banks, was eventually approved for only $50,000.00, which was insufficient to pay the bank loans and furnish necessary operating capital. This resulted in closing down the plant in the late summer of 1953, since which time the plant has not reopened.

The complaint alleged that the officers of the Company, who are the owners of a majority of the stock, were conducting the business with bad husbandry and mismanagement and were by fraud and collusion dissipating the corporation's assets, and that a receivership was necessary in order to prevent fraud and to save the assets of the corporation from being lost, removed or materially injured. These allegations were denied by the appellants who contend that the corporation is solvent and would be able to operate successfully if its present management is not interfered with and is given the opportunity to raise necessary additional operating capital.

The case presents the familiar situation of minority stockholders becoming dissatisfied with existing management and its failure to operate at a profit, coupled with inability to change the management by reason of lack of control of the Board of Directors. The law governing the appointment of a receiver in such cases upon the application of minority stockholders is well settled, and

can be summarized as follows. The cited cases are good examples of the Kentucky law applicable to this case.

■ The appointment of a receiver for a solvent going business corporation is a drastic measure which will be taken by a court of equity in the exercise of its discretion only where there is imminent danger of loss to the stockholders and there is no adequate remedy at law. Dissatisfaction with existing management and the fact that the business is a losing venture are not sufficient to warrant a receivership. In the absence of statutory authority, a deadlocked condition of the stockholders and directors is not of itself, standing alone, sufficient ground for the appointment of a receiver. The general rule is that a receiver will not be appointed unless it appears that the appointment is necessary either to prevent fraud or to save the property from irreparable injury or threatened loss or destruction. Reid Drug Co. v. Salyer, 268 Ky. 522, 105 S.W.2d 625; Greasy Creek Coal & Land Co. v. Greasy Creek Coal Co., 196 Ky. 67, 74–75, 244 S.W. 85; Kaye v. Kentucky Public Elevator Co., 295 Ky. 661, 667, 175 S.W.2d 142.

■ On the other hand, where the purposes for which a corporation was organized have become impossible of accomplishment, or where it is necessary to preserve assets from irreparable loss through mismanagement of its officers or otherwise, a receiver may be appointed to administer its assets for the benefit of its creditors or its stockholders. The officers of the corporation in the management of its property stand in a fiduciary relationship. If the trust funds or properties are being mismanaged and are in imminent danger of being lost to the stockholders and creditors through the collusion and fraud of such officers, equity will not hesitate to assume charge and control of the property through a receiver. Scholl v. Allen, 237 Ky. 716, 725, 36 S.W.2d 353; Metropolitan Fire Ins. Co. v. Middendorf, 171 Ky. 771, 778–779, 188 S.W. 790; Oscar C. Wright Co. v. Steenman, 254 Ky. 381, 71 S.W.2d 991; Sec. 271.555, Kentucky Revised Statutes.

The question presented is whether under the particular facts of this case the District Judge was justified in granting such equitable relief. The Memorandum Opinion of the District Judge did not include any detailed findings of fact. He did not make a finding on the question of fraud on the part of the officers nor on the question of the solvency of the corporation. He stated there was evidence throughout the record that the managers of the corporation had sought to exploit it for their own ends and purposes, much of which was contrary to the best interests of the corporation and its stockholders; that because of acute differences between management on the one hand and creditors and preferred stockholders on the other hand the Company was forced to cease operations in October or November, 1953, and has since then been idle; that it was impossible for the Company to successfully operate without a complete reorganization and the infusion into its assets of at least $100,000.00 of new money; that the preferred stockholders had lost faith in the management, both as to its ability and integrity, and that they too were seeking to exploit the corporation for their selfish ends; and that there was sufficient proof to establish the fact that the best interests of all concerned demanded that the Court appoint a receiver.

■ In our opinion, the evidence, which has been carefully reviewed by us through briefs and oral arguments, sustains the findings and conclusions of the District Judge. In addition to the dissension between preferred stockholders and management and charges of mismanagement, it is an uncontradicted fact that the corporation had ceased its operations approximately seven months prior to the institution of this action and was still closed down eight months later when the receiver was appointed. Eleven more months have passed during the pendency of this appeal. Certain monthly recurrent expenses have been paid, while others, including some salaries, have been accrued on the books. The evidence shows no reasonable prospect of the cor-

poration resuming operations without raising substantial new capital, and the appellants have failed to show to the Court any reasonable hope of raising such capital. More than a reasonable time has already passed in which such action, if possible, could have been taken. At the present time, and also for the indefinite future, the purposes for which the corporation was organized have become impossible of accomplishment. The facts point directly to one conclusion, that unless some remedial action is taken the assets of the corporation are threatened with irreparable injury or loss or destruction.

■ True, the appellants contend that if the receivership is lifted the corporation will be able to reorganize and resume operations which they expect to be successful. In view of the existing dissension between management and the preferred stockholders, who supplied needed additional capital when the Company located in Scottsville, the prior failure of the Company to obtain a loan from Nashville and Louisville banks, and the limited credit extended by the Reconstruction Finance Corporation, this appears to be more of a hope than a reasonable expectation. In any event, the existing receivership is not a legal bar to any proposed reorganization. Under certain conditions liquidation of the assets of the corporation can be discontinued by the Court upon the presentation of a proper and suitable plan of reorganization. Sec. 271.555(3), Ky.Revised Statutes. Reorganization under Chapter 10 of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., is also available. See 501 et seq., 511, Title 11, U.S.Code. Gross v. Irving Trust Co., 289 U.S. 342, 53 S.Ct. 605, 77 L.Ed. 1243; In re Cloisters Bldg. Corporation, 7 Cir., 79 F.2d 694, 696, certiorari denied Allen v. Cloisters Bldg. Corp., 296 U.S. 657, 56 S.Ct. 382, 80 L.Ed. 468, rehearing denied, 297 U.S. 727, 56 S.Ct. 496, 80 L.Ed. 1010; In re Michigan Brewing Co., D.C.W.D.Mich., 24 F.Supp. 430.

The judgment is affirmed.